WILLIAMS, J.,
for the Court En Banc.
Un these consolidated cases, each workers’ compensation judge concluded that the Medical Treatment Guidelines, set forth in LSA-R.S. 23:1203.1, were substantive laws that could not be applied retroactively. In two of the cases, docket numbers 47,998-WCW and 48,051-WCW, this Court granted supervisory writs to review the correctness of the workers’ compensation judges’ rulings.[1] Subsequently, on its own motion, this court consolidated the above cases with an appeal, docket number 48,437-WCA, and elected to consider the three cases en banc,[2] Finding no error in the lower courts’ rulings, we affirm the judgment in docket number 48,437-WCA. We recall the writs in docket numbers 47,998-WCW and 48,051-WCW and affirm. We remand these cases to the appropriate workers’ compensation court for further proceedings.
FACTS

Wal-Mart Associates, Inc. v. Wooden

Claimant, Glenda Wooden, was employed by Wal-Mart Associates, Inc. (“Wal-Mart”). On February 20, 2007, Wooden suffered work-related injuries to her nose, back, neck and left shoulder when a box that weighed approximately 25 pounds fell from a shelf and struck her in the face. Medical treatment for Wooden’s injuries included plastic surgery to repair her nose and arthroscopic surgery on her left shoulder. On April 19, 2012, Dr. Bernie McHugh, Wooden’s treating neurosurgeon, recommended that she undergo a diagnostic nerve root block at L4. Wal-Mart forwarded the treatment recommendation to its consultant, Dr. Stephen Pador, for precertification. On April 26, 2012, Dr. Pador recommended that Wal-Mart deny the procedure in accordance with the criteria established in the Medical Treatment Guidelines (“the Guidelines”) as set forth in LSA-R.S. 23:1203.1. Thereafter, based upon Dr. Pador’s recommendation, Wal-Mart refused to authorize the procedure. However, Wal-Mart did not notify claimant’s counsel or her neurosurgeon of Dr. Pador’s recommendation or that Wal-Mart had denied claimant’s request for the medical procedure until May 23, 2012.
On May 30, 2012, Wooden’s counsel filed a disputed claim for medical treatment (LWC-WC Form 1009) with the Medical Services Division of the Office of Workers’ Compensation Administration (“OWCA”). On June 4, 2012, the OWCA acknowledged receipt of the filing, stating, in part, “[Within] [f]ive days after the date of this letter, the LWC-WC [Form] 1009 and any evidence submitted will be filed with the medical director and his 30[-]day review process will begin.” Thereafter, on June 11, 2012, the OWCA erroneously rejected Wooden’s claim, noting that claimant had “fail[ed] to meet the required fifteen[-]day time frame for the submission [of an appeal] to the OWCA as stated in R.S. 23:1203.1(J).”[3] The letter from the *485 OWCA also stated, “Any party feeling aggrieved by the RS 23:1203.1(J) determination of the medical director shall seek a judicial review by filing Form LWC-WC-1008 Disputed Claim for Compensation with the appropriate hearing office within 15 days of the date said determination is mailed to the parties[.]”
On July 24, 2012, Wooden sought judicial review of the OWCA’s decision by filing a “Motion for Medical Treatment.” Wooden requested that the workers’ compensation judge (‘WCJ”) order Wal-Mart to show cause why it should not be required to authorize and pay for the diagnostic nerve root block. Wal-Mart opposed the motion, arguing that Wooden’s Form 1009 was rejected because it was untimely. Wal-Mart also argued that Wooden should have filed a new Form 1008, instead of filing the motion for medical treatment. In the alternative, Wal-Mart argued that Wooden should have sought judicial review of the OWCA’s rejection of her filing within 15 days.
In response to Wal-Mart’s arguments, Wooden maintained that the Guidelines were not applicable to her case. According to Wooden, her accident occurred in 2007; the Guidelines did not become effective until July 2011. Therefore, the Guidelines could not be applied retroactively to her case.
Sims v. Key Energy Services, Inc.
Marion H. Sims was employed by Key Energy Services, Inc. (“Key Energy”). On March 22, 2011, Sims suffered a work-related injury when he slipped and fell as he attempted to enter a truck. On March 22, 2012, he filed a disputed claim for compensation, seeking past due indemnity benefits, penalties and attorney fees. On September 26, 2012, Sims filed a “Motion to Allow Supplemental 1008,” alleging that Key Energy had denied certain medical treatment recommended by his treating physician, including prescriptions, steroid injections and a spinal stimulator. Sims also alleged that Key Energy was “using the Medical Treatment Guidelines to ‘evaluate’ all requested medical treatment.” He filed a motion in limine, arguing that the Guidelines do not apply retroactively to work-related accidents that occurred prior to July 13, 2011, and, therefore, the Guidelines did not apply to his accident.
Key Energy opposed the claimant’s motion, arguing: (1) in determining whether the Guidelines should be applied, the operative date is the date that the medical services were requested and not the date of the work-related injury; (2) whether the Guidelines should be given retroactive application is a constitutional issue and the workers’ compensation judge (“WCJ”) lacks jurisdiction to hear constitutional issues.

Gagnon v. Jay Mallard Ford

On June 16, 2010, Brian Gagnon suffered a work-related injury during his employment with Jay Mallard Ford. On April 14, 2011, he underwent a laminectomy at L4-L5, and subsequently endured several weeks of physical therapy as ordered by his treating physician. However, he |ficontinued to experience intense low-back pain. Thereafter, in August 2011, Dr. Eu-bulus Kerr, Gagnon’s treating physician, determined that a second surgery (a post *486 er lumbar interbody fusion and laminecto-my at L3-L4/L4-L5) was necessary.
Dr. Kerr submitted the request for a second surgery to Jay Mallard Ford’s chosen utilization-review provider. Without making a decision on the recommendation, the provider requested additional information. When the additional information was not provided, the request for approval of the surgery was deemed withdrawn.
On January 31, 2012, Gagnon filed a disputed claim for medical treatment (LWC-WC Form 1009) with the Medical Services Division of the OWCA. The claim was denied on the basis that the requested medical procedure did not comply with the Guidelines.
On March 28, 2012, Gagnon sought judicial review of the OWCA’s decision. He argued that the Guidelines did not apply to his case because his work-related accident occurred prior to their effective date.
These cases were tried by two different Districts. The Wooden and Gagnon matters were tried by WCJ Brenza Irving Jones in District IE; the Sims matter was tried by WCJ Patrick Robinson in District 1W.
In Wooden, the WCJ found that the Guidelines could not be applied retroactively, and, thus, were not applicable to Wooden’s case.[4] The judge | (¡ordered Wal-Mart to authorize and pay for Wooden’s diagnostic nerve root block by December 12, 2012. In Sims, the WCJ found that the Guidelines reduced the “medical benefits to which an injured worker might be entitled and effect substantive changes in the law.” Consequently, the WCJ ruled that the Guidelines could not be applied to Sims’ case retroactively.[5] In \7Gagnon, *487 the WCJ ruled in favor of Gagnon, concluding that the Guidelines affected his substantive rights; therefore, they could not be applied retroactively.
Thereafter, Jay Mallard Ford appealed the judgment to this Court. Wal-Mart and Key Energy sought supervisory review.[6] This Court granted supervisory writs to review the correctness of the lower courts’ decisions. Subsequently, this Court consolidated the matters for review and decision.[7]
DISCUSSION
In 2009, the Louisiana Legislature enacted LSA-R.S. 23:1208.1[8] to provide a process for developing a medical treatment schedule to use in making medical services and treatment decisions in workers’ compensation matters. The original statute[9] provided, in pertinent part:
B. The director [of the OWCA] shall, through the office of workers’ compensation administration, promulgate rules in accordance with the Administrative Procedure Act, R.S. 49:950 et seq., to establish a medical treatment schedule.
(1) Such rules shall be promulgated no later than September 30, 2010.
(2) The medical treatment schedule shall meet the criteria established in this Section and shall be organized in an interdisciplinary manner by particular regions of the body and organ systems. IsC. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.
D. The medical treatment schedule shall be based on guidelines which shall meet all of the following criteria:
(1) Rely on specified, comprehensive, and ongoing systematic medical literature review.
(2) Contain published criteria for rating studies and for determining the overall strength of the medical evidence, including the size of the sample, whether the authors and researchers had any financial interest in the product or service being studied, the design of the study and identification of any bias, and the statistical significance of the study.
(3) Are current and the most recent version produced, which shall mean that documented evidence can be produced or verified that the guideline was devel *488 oped, reviewed, or revised within the previous five years.
(4) Are interdisciplinary and address the frequency, duration, intensity, and appropriateness of treatment procedures and modalities for all disciplines commonly performing treatment of employment-related injuries and diseases.
(5) Are, by statute or rule, adopted by any other state regarding medical treatment for workers’ compensation injuries, diseases, or conditions.
I. After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203, et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.
|8J. After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ compensation administration medical director on a form promulgated by the director. The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.
K. After the issuance of the decision by the medical director of the office, any party who disagrees with the medical director’s decision, may then appeal by filing a ‘Disputed Claim for Compensation,’ which is LWC Form 1008. The decision of the medical director may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director was not in accordance with the provisions of this Section.
L. It is the intent of the legislature that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.
The Guidelines became effective July 13, 2011.
Wal-Mart and Key Energy contend each WCJ erred in considering the retro-activity of the statute. They argue that WCJs lack subject matter jurisdiction over constitutional issues.
These arguments lack merit. Neither WCJ addressed the constitutionality of the *489 Guidelines.[10] Rather, each WCJ determined which law would apply to the particular case before it. The WCJs expressly | mconcluded, with respect to the instant cases, the Guidelines create “substantive changes” in the law; therefore, they cannot be applied retroactively.
Wal-Mart, Key Energy and Jay Mallard Ford (“the employers”) contend each WCJ committed legal error in finding that the Guidelines were not applicable to their cases. They contend the Guidelines became applicable to all cases as soon as they were promulgated. The employers cite the following language set forth in LSA-R.S. 23:1203.1(1) in support of that argument:
After the promulgation of the medical treatment schedule ... medical care, services, and treatment due ... shall mean care, services, and treatment in accordance with the medical treatment schedule])]
The employers also contend the Guidelines are subject to retroactive application because they do not impair any vested rights of the employees and are procedural in nature. According to Wal-Mart, Wooden was injured on February 18, 2007, and she had the right to any reasonable and necessary medical treatment related to her work-related accident as provided in LSA-R.S. 23:1203. Thus, it argues that the enactment of the Guidelines did not affect the claimant’s right to medical treatment; it merely provided for a new procedure for asserting her claim.
Further, the employers contend the Guidelines should be applied to all requests for medical treatment arising after the effective date of the Guidelines. They argue that the language set forth in 23:1203.1(J) shows that the legislature intended the Guidelines to apply to “any dispute arising] after January 1, 2011,” regardless of when the accident occurred. According to the employers, although the Guidelines did not become effective until July | t ¶ 13, 2011, the legislature indicated its intent that the Guidelines would apply to all claims arising after their effective date, regardless of the date of the injury.
No section of the Revised Statutes is retroactive unless it is expressly so stated. LSA-R.S. 1:2. In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. LSA-C.C. art. 6.
The Louisiana Supreme Court has interpreted LSA-C.C. art. 6 and LSA-R.S. 1:2 to require a two-fold inquiry: first, courts must determine whether the legislature expressed in the enactment its intent regarding retrospective or prospective application. If the legislature did so, then the inquiry ends. If the legislature did not do so, courts must classify the enactment as substantive, procedural or interpretative. M.J. Farms Ltd. v. Exxon Mobil Corp., 2007-2371 (La.7/1/08), 998 So.2d 16; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992). Even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. M.J. Farms Ltd., supra; Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94), 633 So.2d 1235.
If an act creates a new obligation where no such obligation existed before, the act is substantive. Grambling State Univ. v. Walker, 44,995 (La.App.2d *490 Cir.3/3/10), 31 So.3d 1189; Lieber v. Caddo Levee Dist. Bd. of Com’rs, 27,267 (La.App.2d Cir.8/23/95), 660 So.2d 188, writ denied, 95-2355 (La.12/8/95), 664 So.2d 427. Substantive laws establish new rules, rights and duties, or change existing ones. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94), 630 So.2d 714; Grambling State Univ. v. Walker, supra. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Segura, supra. Interpretative laws merely establish the meaning the interpreted statute had from the time of its enactment. Id.
The law governing an action for workers’ compensation benefits is the law in effect at the time of the injury. Frith v. Riverwood, Inc., 2004-1086 (La.1/19/05), 892 So.2d 7; Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992).
To date, three other appellate courts have ruled on the issue herein. In Church Mutual Ins. Co. v. Dardar, 2012-0659, 2013-0037 (La.App.4th Cir.6/26/13), 119 So.3d 967, writ granted, 2013-2351 (La.1/17/14), 130 So.3d 332, 2014 WL 321679, the claimant injured her back at work in 1999; her indemnity settlement was approved in 2008 and her right to medical treatment remained ongoing. In late 2011, or early 2012, the claimant’s treating physician recommended a certain medical treatment, and the employer denied the request. The claimant then sought judicial review of the employer’s decision. The WCJ ordered the claimant to resubmit her request in accordance with LSA-R.S. 23:1203.1, concluding that the law in effect at the time the claimant requested medical treatment applied. The Fourth Circuit Court of Appeal reversed, stating:
We find that La. R.S. 23:1203.1, which contains guidelines that did not exist when [the claimant] was injured, creates and places rules, rights, and duties upon a claimant seeking reimbursement for recommended medical treatment. Thus, we find that the enactment of La. R.S. 23:1203.1 was substantive in nature. Therefore, it does not |isapply retroactively to [the claimant’s] rights acquired when she sustained her work-related injury in 1999.
In Courville v. Turner Indus. Group, LLC, 2013-0711 (La.App. 1st Cir.7/15/13) (unpublished), the First Circuit Court of Appeal granted the claimant’s writ application, concluding, “La. R.S. 23:1203.1 substantively changed the law and thus is applied prospectively only.”
In Cook v. Family Care Services, Inc., 2013-108 (La.App. 3d Cir.8/28/13), 121 So.3d 1274, writ granted, 2013-2326 (La.1/17/14), 130 So.3d 332, 2014 WL 321667, a three-judge panel of the Third Circuit Court of Appeal concluded that LSA-R.S. 23:1203.1 could be applied retroactively. However, more recently, that court, sitting en banc, expressly overruled its prior decision in Cook, stating:
Although the law appears to be procedural in nature, it has a substantive effect in that it requires an employee to first seek an appeal from the medical director of the office of workers’ compensation, and, only then, if not satisfied with that ruling, can the employee file a disputed claim and seek review before the WCJ, albeit with a more stringent burden of proof. Thus, although the legislature’s intent in enacting La. R.S. 23:1203.1 was to ensure the delivery of medical care and treatment in a timely and efficient manner, an injured employee is required to cross an additional hurdle in order to receive the care recommended by his or her physician. Accordingly, we find that La. R.S. *491 23:1203.1 has a substantive effect and that it should only apply prospectively.
Romero v. Garan’s, Inc., 2013-482, p. 6 (La.App. 3d Cir.12/26/13), 130 So.3d 451, 2013 WL 6834784.[11]
We agree with the above circuit courts of appeal. At the time Wooden, Sims and Gagnon suffered their work-related injuries, LSA-R.S. 23:1203 provided:
A. In every case coming under this Chapter, the employer shall furnish | 14all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.
B. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers’ compensation administration utilization review rules.
C. The employer shall furnish to the employee the necessary cost of repair to or the replacement of any prosthetic device damaged or destroyed by accident in the course and scope and arising out of such employment, including but not limited to damage or destruction of eyeglasses, artificial limbs, hearing aids, dentures, or any such prosthetic devices whatsoever.
D. In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services, medicines, and prosthetic devices, which the employer is required to furnish under this Section, and for the vocational rehabilitation-related mileage traveled by the employee at the direction of the employer. When the employee uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicle on state business. The office shall inform the employee of his right to reimbursement for mileage.
E. Upon the first payment for a claimant’s medical care, service, or treatment, the payor, as defined in R.S. 23:1142(A)(1), shall communicate to the claimant information, in plain language, regarding the procedure for requesting an independent medical examination in the event a dispute arises as to the condition of the employee. A payor shall not deny medical care, service, or treatment to a claimant unless the payor can document a reasonable and diligent effort in communicating such informa *492 tion. A payor who denies medical care, service, or treatment without making such an effort may be fined an amount not to exceed five hundred dollars or the cost of the medical |1scare, service, or treatment, whichever is more.
Pursuant to LSA-R.S. 23:1203, a workers’ compensation claimant is entitled to medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury, provided that the claimant proves the necessity of the treatment and the causal connection between the treatment and the employment-related accident. See, Frye v. Olan Mills, 44,192 (La.App.2d Cir.4/8/09), 7 So.3d 201; Taylor v. Wal-Mart Stores, Inc., 40,179 (La.App.2d Cir.9/21/05), 914 So.2d 579, writ not cons., 2006-0144 (La.4/17/06), 926 So.2d 500, cert. denied, 549 U.S. 1157, 127 S.Ct. 982, 166 L.Ed.2d 783 (2007). However, prior to the enactment of LSA-R.S. 23:1203.1, the claimant was required to prove the causal connection between the treatment and the work-related accident by a preponderance of the evidence. Smith v. Schumpert, 48,126 (La.App.2d Cir.6/26/13), 117 So.3d 315; Taylor, supra. Under the Guidelines, a claimant seeking judicial review of the medical director’s decision[12] must prove the necessity of the sought-after medical treatment by clear and convincing evidence. See LSA-R.S. 23:1203.1(K).
Thus, we find LSA-R.S. 23:1203.1 imposes substantive new obligations and duties upon the claimants that did not exist when the claimants were injured. Consequently, the statute has a substantive effect and it should not be applied retroactively. To reach a different result would, as stated by our other circuit courts of appeal, contradict the well-settled principle that our laws may not be applied retroactively if doing so would | ^impair contractual obligations or disturb vested rights in violation of the Contract and Due Process clauses of our constitutions. See, U.S. Const. amend. XIV § 1; U.S. Const. Art. I, § 10; La. Const. Art. I, § 2; La. Const. Art. I, § 23; Keith v. U.S. Fid. & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180; Rousselle, supra. Accordingly, the workers’ compensation judges correctly found that the statute cannot be applied retroactively.
CONCLUSION
For the above-mentioned reasons, we recall the writs in docket numbers 47,998-WCW and 48,051-WCW as improvidently granted and affirm the workers’ compensation judges’ rulings. We affirm the WCJ’s judgment in docket number 48,437-WCA. We remand these three matters for further proceedings. Costs of this review and appeal are assessed to the employers, Wal-Mart Associates, Inc., Key Energy Services, Inc., and Jay Mallard Ford, respectively.
WRITS RECALLED. CONSOLIDATED CASES AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.
CARAWAY, J., dissents with written reasons.
BROWN, C.J., dissents for the reasons assigned by CARAWAY, J.

. In docket Nos. 47,998-WCW and 48,051-WCW, requests for leave to file amicus curiae briefs were granted by this Court.

. When authorized by law, or when the court deems it necessary to promote justice or expedite the business of court, the court may sit in panels of more than 3 judges or en banc. Uniform Rules, Courts of Appeal, Rule 1-5.

. LSA-R.S. 23:1203.1(J) provides:
After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after September 30, 2010, as to whether the recommended care, services, or treatment is in accordance with *485 the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers’ compensation administration medical director on a form promulgated by the director. The medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

. The WCJ granted Wooden's motion for medical treatment, stating:
[Wooden] was injured in an accident occurring February 18, 2007. The Medical Treatment Guidelines became effective July 13, 2011. Jurisprudence has held that law in effect at the time of the accident is the law that controls the case. The law in effect on the date of the workers' injury is controlling. The rights and duties of the parties are fixed according to the law in effect at the date of the injury.
The Medical Treatment Guidelines created a substantive change in the law. Prior to creation of the guidelines, [Wooden’s] entitlement to the diagnostic nerve root block was determined by the court based on a totality of the circumstances. The Medical Treatment Guidelines created conditions under which various medical treatments can be administered. The Medical Treatment Guidelines created a vast, extensive, and substantive change in the medical rights extended to claimants under the workers’ compensation law.
Furthermore, even if the Medical Treatment Guidelines were applicable to this case, [Wooden] is still entitled to maintain her action before this court.
[T]he denial of treatment was transmitted by correspondence dated May 23, 2012. An appeal with the office of workers’ compensation medical director was made 7 days later, well within the fifteen (15) day period provided in LSA-R.S. 23:1203.1(J). Thus, the Form 1009 was timely submitted for review.
A denial of medical treatment is a denial of rights granted in [R.S.] 23:1121. The statute gives an injured worker an absolute right to select one physician in any field without the approval of the employer. A denial of treatment is a denial of [Wooden's] choice of physician.
[Wooden's] choice of physician in the field of neurosurgery is Dr. Bemie McHugh. Dr. McHugh recommended she undergo a diagnostic nerve root block at L4 on the right. The diagnostic procedure is required to determine the necessity of surgery. It is a medical procedure chosen by her choice of physician, and this court finds she is entitled to the diagnostic nerve root block[J

. The WCJ granted Sims’ motion to supplement Form 1008 and motion in limine, stating:
*487 [T]he [Guidelines] potentially reduce the medical benefits to which an injured worker may be entitled. The court concludes that § 1203.1, and the [Guidelines] enacted under its authority!,] effect substantive changes in the law. Absent a clear expression of legislative intent concerning retroac-tivity, and pursuant to La. C.C. art. 6, the [Guidelines] cannot be applied to claims for treatment arising from accidents that predate its effective date.

.On December 14, 2012, the LUBA Insurance Company, Louisiana Workers’ Compensation Corporation, and Louisiana Home Builders Association Self Insurers Fund successfully filed a motion with this Court requesting leave to file an amicus curiae brief.

. Since each case presents questions of law, our review will be limited to a determination of whether the WCJs’ rulings were legally correct.

. Acts 2009, No. 254 § 1, amended by Acts 2010, No. 619 § 1, eff. June 25, 2010.

. In 2010, the statute was amended to provide that the "rules shall be promulgated no later than January 1, 2011.” Acts 2010, No. 619 § 1.

. The WCJs did not address the issue of whether the Guidelines were constitutional with respect to medical treatment for work-related accidents, arising after July 13, 2011.

. On January 17, 2014, the Louisiana Supreme Court granted applications for writs of certiorari in Cook v. Family Care Services, Inc., 2013-2326 (La.1/17/14), 130 So.3d 332, 2014 WL 321667 and Church Mutual Ins. Co. v. Dardar, 2013-2351 (La.1/17/14), 130 So.3d 332, 2014 WL 321679.

. The Guidelines also added the requirement that all rejected or denied requests for medical treatment be first presented to the medical director. Thus, under the Guidelines, the claimants herein, who had a right to immediate judicial review, would lose this vested right.