PETTIGREW, J.
Un this workers’ compensation case, the claimant/employee, Gary E. Thompson (Mr. Thompson), appeals a judgment dated April 24, 2015, rendered by the Office of Workers’ Compensation (OWC) judge. That judgment upheld the decision of the OWC medical director that denied Mr. Thompson’s request for approval to have a second lumbar surgery,' which had been Recommended by' his treating • orthopedic physician. At issue is whether the OWC judge erred át the hearing on Mr. Thompson’s[1] appeal of the medical director’s decision by not allowing Mr. Thompson to present any “new” evidence at the hearing that had not been before the medical director in making its decision. After thoroughly reviewing the record and the applicable law, we find the OWC judge erred in refusing Mr. Thompson the opportunity to present evidence in attempts to meet his burden of proof. For' the following reasons, we reverse and remand.
FACTUAL SUMMARY AND PROCEDURAL HISTORY
Mr. Thompson was employed by the Der partment of Health and Hospitals, Office of,Public Health (DHH-OPH), as a program monitor, earning weekly wages of *594 approximately $3,300.00. On February 15, 2011, Mr. Thompson-left his'office on the eighth floor of the Bienville Building at the end of the work day. He entered an elevator and it descended in normal operating fashion until it reached the third floor. When the elevator reached the third floor, it dropped’ suddenly and abruptly fell to the ground level, landing with a very strong impact, resulting in serious injuries to Mr. Thompson’s back, hip, and ■ both knees.
Post-incident MRI’s revealed injuries to both knees and to both, thé" upper and lower lumbar spine. The record — including the report dated July 10, 2012, of the IME performed by Dr. F. Allen Johnston (appointed by the OWC) — further reveals that ás a result of those injuries, Mr. Thompson underwent bilateral knee ar-throscopy on April 19, 2011.
Numerous conservative attempts, including medial branch blocks and radiofre-quency neurotomies, failed to relieve Mr. Thompson’s back pain or symptoms. His treating orthopedic surgeon, • Dr., Jorge Isaza, recommended a discogram to determine whether Mr. Thompson was a surgical candidate. Dr. Johnston’s IME report states that | she was in agreement with, the discogram recommendation, although he also recommended repeating the medial branch blocks as well. .
After several failed attempts by Mr. Thompson to obtain approval, the disco-gram .was ultimately, approved by- the OWC medical director. The discogram was performed by Dr. Charles Aprill, an interventional radiologist specializing in discograms. The discogram identified pain generators at Ll-2, L2-3 and L5-S1 levels in Mr. Thompson’s back, confirming his lumbar injuries and consistent with the recommendation that Mr. Thompson undergo a lumbar fusion. That surgery was performed in April 2013, by Dr. Isaza, on the L5-SI level, to address Mr. Thompson’s lower.lumber injury. However, the surgery did not relieve Mr. Thompson’s chronic back pain. Dr. Isaza then recommended several post-surgery diagnostic tests, but the requests for approval to conduct those tests were all refused by the OWC medical director. Dr. Isaza then recommended another lutnbar fusion on the L2-3, Ll-2 level, to address Mr. Thompson’s upper lumbar injury, the need for which was reconfirmed by a subsequent MRI report dated May 14, 2014.
Mr. Thompson then presented Dr. Isa-za’s recommendation for the second lumbar fusion to the OWC medical" director, seeking approval to have the surgery performed. The medical director denied this request, and Mr. Thompson filed a disputed claim for compensation (Form 1008) with the OWC bn January 20, 2015, appealing the medical director’s denial of the second lumbar surgery.
Mr. Thompson attached to his 1008 form the March 2011 MRI report (revealing objective findings of, injuries to Mr. Thompson’s upper, and lower back), as well as the IME.report of Dr, F. Allen Johnston,,(confirming the MRI findings of injuries to Mr. Thompson’s back and revealing Dr. Johnston’s agreement with Dr. Isaza’s recommendation for a discogram to determine if Mr. Thompson was a surgical candidate). Also attached to the 1008 form was the medical director’s denial of the request for approval for the second lumbar surgery, dated December 30, 2014. Finally, in a narrative appendix to the 1008 form, Mr. Thompson indicated that he intended to introduce the deposition of Dr. Isaza, to respond to the findings of the medical director, and provide support for Dr. Isa-za’s | Recommendation to proceed with another fusion for the upper level injuries to Mr. Thompson’s back.
*595 The matter was assigned to an OWC judge, Jason Ourso. A notice, dated February 3; 2015, was sent informing the parties that a hearing on Mr.' Thompson’s appeal was set for March 6, 2015, and that the purpose of the hearing was to “take evidence and/or to hear oral argument” on the appeal. By unopposed motion, the hearing date was continued and held on April 17, 2015, following which a judgment was rendered and signed on April 24,2015, upholding the decision of the OWC medical director and dismissing Mr. Thompson’s appeal of that decision with prejudice. On May 20, 2015, Mr. Thompson sought and was granted this devolutive appeal of that judgment.
THE APPEAL
Although separated into several assignments of error, Mr. Thompson’s appeal essentially challenges the propriety of the OWC judge’s refusal to allow him to present new evidence in' order to meet his burden of showing, by clear and convincing evidence, that the medical director’s decision was wrong and not in accordance with the Medical Treatment Guidelines.
APPLICABLE LAW
In 2009, the legislature enacted La. R.S. 23:1203.1, which charged the Director.,of the Office of Workers’ Compensation to establish a medical treatment schedule. See La. R.S. 2S:1208:i(B). The Medical Treatment Guidelines became effective July 13, 2011, and are promulgatéd in the Louisiana Administrative Code, Title 40 Part 1, Subpart 2, Medical Guidelines. The statute is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish'meaningful guidelines for the treatment of injured workers. Church Mutual Insurance Company v. Dardar, 2013-2351 (La.5/7/14), 145 So.3d 271, 275. The statute expresses the legislature’s intent that, with the establishment and enforcement thereof, all medical treatment shall be delivered in an efficient and timely manner to injured employees. La. R.S. 23:1203.1(L); Church, 145 So.3d at 276.
| ^Subsection I of the statute provides that medical care, services, and treatment due by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. La. R.S. 23:1203.1(1). This subsection further provides that when the services, care, and treatment recommended vary from the promulgated' schedule, those too shall be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence that a variance from the medical treatment schedule is reasonably required to cure or relieve the injured worker from the effects of his injuries. La. R.S. 23:1203.1(1) (emphasis added).
Once the medical director renders a decision concerning treatment, care, or services requested, La. R.S. 23:1203.1(K) provides, in relevant part, that any party who disagrees with the decision of the OWC medical director may then appeal that finding by filing a Disputed Claim for Compensation, or LWC Form 1008. The statute further provides that the decision of the medical director “may be overturned when it is shown; by dear and convincing evidence, the. decision ... was not in accordance with the provisions of this Section.” La. R.S. 23:1203.1(K) (emphasis added).
By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do not exclude any particular care. Instead, those provisions represent and reflect a rational policy choice by the legislature' to confer authority on the Director of the OWC, with the assistance of- the medical advisory council and the medical director, to deter *596 mine in advance the medical necessity for certain medical care. In regards to medical procedures not included in the medical treatment schedule and, thus, not presumptively deemed necessary, claimants can overcome the predetermination by seeking review and/or a variance from the medical director of the OWC. . La. R.S. 23:1203.1(1) and (J); Church, 145 So.3d at 284. As noted earlier, subsection K of the statute provides that in the event a variance is, denied, claimants can appeal to another administrative level of review conducted by the OWC judge. The medical director’s decision may be overturned when it is shown by dear and convincing evidence that the decision was not in accordance with the guidelines. As noted by this court in Bridges v. New Orleans Trucking and Rental Depot, Inc., 2013-0769 (La.App. 1 Cir. 12/27/13), 134 So.3d 633, 634, proof by clear and convincing evidence is a heavier burden of proof than proof by a preponderance of the evidence.
Thus, significantly, the burden of proof a claimant must meet when seeking a variance from the guidelines from the medical director (by a preponderance of the medical scientific evidence, La. R.S. 23:1203.1(1)) is.a lesser burden than the clear and convincing evidence the claimant must present when challenging the medical director’s decision by appealing to the OWC judge. (La. R.S. 23:1203.1(K)).
The standard of appellate review to be employed when reviewing an OWC judge’s judgment regarding the propriety of the medical director’s decision is manifest error. Guidry v. American Legion Hospital, 2014-1285 (La.App. 3 Cir. 4/1/15), 162 So.3d 728, 730.
APPLICATION OF LAW AND ANALYSIS
At the inception of the hearing before the OWC judge challenging the medical director’s decision to deny Mr. Thompson’s reqüest to have the recommended second lumbar fusion, counsel for Mr. Thompson attempted to offer into evidence the deposition of Dr. Isaza that had been taken on April 6, 2015, as-well as. Mr. Thompson’s own testimony, to support his' position that the medical director erred in denying approval for the recommended surgery. The defendant’s counsel objected'-to the introduction of Dr. Isaza’s deposition as well as to the admission of any evidence that had not-been first presented to'the medical director. The OWC judge agreed with the defendant, and disallowed the presentation of any “new”.evidence (not,previously presented to the medical director), concluding that an appeal of the medical director’s decision “is not a de novo appeal,” rather it is based on the evidence that the medical director had at the time the decision was made. The OWC judge further noted that the legislature could have, but did not, state in the statute that the .appeal was de novo and stated, “[njothing new is going to be allowed.” Following brief argument by counsel, the. OWC judge denied the appeal finding that “based upon the evidence that [the medical director] had at the time of the decision,” the plaintiff had “failed to show by clear and convincing evidence that |7the medical director was wrong.” The OWC judge did allow Mr! Thompson’s counsel to proffer the disallowed evidence.
The OWC judge was correct in that the statute does not expressly provide that the appeal of the medical director’s decision is a de novo review. But, the inquiry or the analysis of what evidence is admissible at said hearing does not depend on, nor end, with the absence of any such statutory language.
The statute is completely silent with regard to what evidence may be introduced to the OWC judge. However, the statute does expressly provide- two separate and *597 distinct burdens of proof that a claimant must meet at different levels in the appeal process. First, when treatment is requested that is not in accordance with the medical treatment guidelines, a claimant may request approval.- from the medical director by demonstrating by a preponderance of the scientific medical evidence that a variance from the guidelines is reasonably required to cure or relieve the injured worker of the effects of his injuries. See La. R.S. 23:1203.1(1).- Second, when a claimant disagrees with the decision of .the medical director (based on a- preponderance of the evidence), he may appeal and the decision of the medical director may be overturned when it is shown by clear and convincing evidence that the decision, of the medical director was not in accordance with the provisions of this Section. See La. R.S. 23:1203.1(K).
As shown above, the burden of proof on the claimant is greater when appealing the medical director’s decision than it. is when the clhimant is presenting a request to the medical director in the first place. The OWC judge’s decision in this case, that the evidence presented to the medical director is the only evidence that may be presented at a hearing challenging the medicar director’s decision, in effect re-writes the statute and eliminates the distinct and separate burdens of proof required of a claimant at sepárate junctures in the proceedings-. When presenting to the medical director, a preponderance of the evidence suffices. However, when the medical" director’s decision is challenged, the claimant must increase the evidence to meet the clear and convincing statutory standard. By limiting the claimant’s evidence on appeal to the same evidence that Was' presented to the medical director, the OWC judge’s decision erroneously either increases the initial ^“preponderance of the evidence” statutory burden of proof to the higher clear and convincing standard, or it may render impossible for a claimant who properly meets his burden before the medical director, to also meet the increased burden of proof on the. appeal, without allowing any additional evidence. Thus, the OWC judge’s decision is- in direct conflict with the statutory language and burdens of proof set forth thereby.
Additionally, although the issue has not been directly addressed by this circuit, we note decisions from other circuits that have held that additional evidence is allowed at a hearing on an appeal of the medical director’s decision before the OWC judge. In Gilliam v. Brooks Heating and Air Conditioning, 49,161 (La.App. 2 Cir. 7/16/14), 146 So.3d 734, the court was presented with the procedural question of the scope of evidence that the OWC judge may consider on the appeal of a decision of the medical director. Id., at p. 744. The court held that it was “appropriate” for the OWC judge to consider additional evidence not received by the medical director. Id., at p. 744-45. In so finding, the court noted that the position of the OWC judge was created to replace district courts in the adjudication process of compensation claims. The court, citing La. R.S. 23:1317, further noted that the OWC judge is given the authority to hear the evidence that may be presented by each party and that at the hearing, the OWC judge is not bound by technical rules of evidence or procedure, but all findings of fact must be based on competent evidence. Thus, the court found that the new, disputed evidence before the OWC judge was not error. Id., at p. 745.
Also, in Spikes v. Louisiana Commerce & Trade Association, 2013-919 (La.App. 3 Cir. 7/2/14), 161 So.3d 755, at a hearing on the appeal of the decision of the medical director, the defendants objected to the introduction of depositions and certain medical records that were offered into evi *598 dence at- the hearing, because that evidence had not been submitted to and considered by the medical director. The OWC judge allowed the introduction of that evidence and defendants appealed, assigning error to the introduction of that evidence. The third circuit, relying on La. C.E. art. 702, which governs the admissibility of expert testimony, found no error in the admission of new evidence at the appeal hearing. The court acknowledged that the OWC judge is not | abound by technical rules of evidence, but noted that all findings of fact by the OWC judge must be. based on competent evidence, citing La. R.S. 23:1317(A). Id., at p. 760-61. The court further noted that OWC judges are not medical experts and expert testimony could be reasonably necessary to assist them in understanding the medical evidence at issue, in determining the proper application of the newly applicable medical treatment guidelines. Id., at p. 761.
Finally, in Wilson v. Broadmoor, L.L.C., 2014-694 (La.App. 5 Cir. 3/11/15), 169 So.3d 463, the court affirmed a judgment by the OWC judge that held the decision of the medical director was clearly and convincingly wrong. Although the issue of what evidence is admissible at the appeal hearing before the OWC was not directly raised or addressed, the opinion noted that at the appeal hearing, the defendant was not present, but the claimant introduced all of his relevant medical records, and the opinion suggests that some of these records had not been previously presented .to the medical director. Id., at p. 465.
Given our own interpretation of the statute, recognizing and giving effect to the different burdens of proof required of the claimant at the two separate proceedings (approval from the medical director/appeal of the -medical director’s decision); the' foregoing jurisprudence; and mindful that the workers’ compensation act is to be interpreted so as to assure the delivery of benefits to an injured employee (La, R.S. 23:1020.1 C(l)) \ we conclude the OWC judge manifestly erred in disallowing Mr. Thompson’s relevant evidence, including the deposition of Dr. Isaza and his own testimony, because that evidence had not been before the medical director in rendering its decision. We find additional evidence may be necessary for the claimant to meet the higher burden of proof statutorily required at the appeal of the medical director’s decision, and as such, it is admissible notwithstanding that it constitutes “new” evidence.
^CONCLUSION
Accordingly, we reverse the judgment of the OWC judge that'upheld the medical director’s decision, without allowing and considering the admissible relevant evidence Mr. Thompson needed to prove by clear and convincing evidence that the medical director’s decision was erroneous. While the disallowed evidence was proffered, wé find a remand is appropriate, as the OWC judge, in reviewing a challenge to the medical director’s decision, reviews all relevant evidence and makes factual findings thereon in determining if the clear and convincing burden of proof imposed by La. 23:1203.1(K) is met. Therefore, we remand the matter back to the OWC judge with instructions to allow and consider the evidence that Mr. Thompson attempted to introduce and to make factual and legal findings regarding the medical director’s decision based on all the relevant evidence. Costs of this appeal, in the amount of $391.14 are assessed to the defendant, the *599 Department of Health and Hospitals, Office of Public Health. .
REVERSED AND REMANDED.

. Cf, La. R.S. 23:1020.1(D)(2), effective 8/1/12, provides "[l]aws pertaining to workers’ compensation shall be construed in ac^ cordance with the basic principles of statutory construction and not in favor of either employer or employee."